*84 N. J. Eq.* Cumberland L. Co. *v.* Clinton Hill L. & Mfg. Co.

\* Cumberland Lumber Company et al.

*v.*

Clinton Hill Lumber and Manufacturing Company et al.

[Filed June 21st, 1915. Decided September 20th, 1908.]

1. A corporation issued forty shares of its stock to K., Sr., forty shares to K., Jr., and two shares to G. W. K., and after its insolvency, and on its receiver's application in 1899 for an assessment against them to pay the corporation's debts and the expenses of administration, they alleged that there was no incorporation, no issue of stock, and no transfer of property to the corporation. There was evidence that the stock had been issued as paid-up stock for a total of $8.200 in consideration of the transfer of a stock of lumber to the corporation by K., Sr., which property was appropriated to a payment by each stockholder; that the stock of lumber was said to be worth $10,136, and at least worth $8,200, and sufficient to pay forty per cent. of an assessment previously made on the stock, and that K., Sr., had himself sold the stock of lumber without accounting therefor. A decree was made assessing sixty per cent. of the unpaid subscription against the stockholders, with the right to enforce payment by suit, but without prejudice to the rights of any person named in the petition or order to any defence to any action, legal or equitable, on the alleged stock subscription. The stockholders' appeal, on the ground that the decree did not protect their legal rights, was dismissed, and the receiver by action collected of K., Jr., G. W. K., and G. W. K. as administrator of K., Sr., the amount of the assessments.—*Held*, on the administrator's application to open the original decree of assessment to allow the defence of payment of the intestate's entire subscription, that in view of the intervening equities, the misapprehension of counsel as to the legal scope and effect of the hearing on the application for assessment, or of the decree made thereon, as to the scope of the defences, was no ground for opening the decree for a new hearing.

2. In such case the failure to appeal from the decree on the application for assessment within the time limited by law left the decree final and conclusive, so that after the expiration of the time limited for appeal it could not be opened or modified.

3. Final decrees are opened by bill of review, which cannot be filed after three years, except for new evidence discovered after the decree.

4. An order for the assessment of stockholders, made in insolvency proceedings in the course of administration of the assets of the insolvent corporation, is an interlocutory decree rather than a final decree, although as between the parties it finally settled the issues litigated and involved on the hearing for the order.

\* Affirmed 78 N. J. Eq. 294.

5. Such interlocutory order might in a proper case be opened by petition, rather than by bill of review, though the petition must be filed within forty days, and the lapse of over three years, the time limited for a bill of review on final decrees, was fatal.

On petition to open decree for assessment of stockholders.

*Mr. Frank E. Bradner* and *Mr. Chandler W. Riker,* for the complainants.

*Messrs. Coult & Smith, contra,* for the receiver.

EMERY, V. C.

On November 9th, 1899, the receiver of the insolvent corporation applied to the court for an assessment against the original subscribers to the capital stock of the corporation, to pay in so much of their respective unpaid subscriptions as might be necessary to pay the corporate debts, with expenses of administration. The application was by petition filed in the cause against four of the five original subscribers, William S. Ketcham, Jr. (one hundred shares), George W. Ketcham (five shares), Frank D. Holloway (one hundred shares) and Edward E. Campfield (one hundred shares), and against said George W. Ketcham, as administrator of his father, William S. Ketcham, deceased, the remaining original subscriber, for one hundred shares. In the petition stock was alleged to have been actually issued to William S. Ketcham for forty shares, William S. Ketcham, Jr., forty shares, and George W. Ketcham, two shares, eighty-two shares in all. No further shares were issued to any of the stockholders, and the subscribers Holloway and Campfield were alleged to be insolvent. The respondents, William S. Ketcham and George W. Ketcham, individually, and as administrator of William S. Ketcham, Sr., filed a joint answer to the petition denying (among other things) the existence of the corporation, or any subscription for the stock. A previous assessment against the same stockholders had been reversed on their appeal, because there did not appear on the record to have been any judicial inquiry, ascertaining the proportion of unpaid subscriptions needed to meet the

CASES IN CHANCERY, 1915. . 559

84 N. J. Eq.   Cumberland L. Co. v. Clinton Hill L. & Mfg. Co.

liabilities. *Cumberland Lumber Co. v. Clinton Hill Lumber Co. (Court of Errors and Appeals, 1898), 57 N. J. Eq. 627, 629.* On the application made in 1899, and following the practice indicated in the opinion of the court of errors and appeals, a hearing took place as to the amount of debts and expenses to be paid, and the amount of unpaid subscriptions. On this hearing evidence was given which showed, or tended to show, that the eighty-two shares of stock actually issued to the three Ketchams was issued to them respectively as paid-up stock, upon the transfer of certain personal property (a stock of lumber) by Holloway to the company, in consideration of Holloway's indebtedness to William S. Ketcham, Sr., the intestate, and that for this transfer the Ketchams were to receive, and did receive, paid-up stock for $8,200. Holloway's indebtedness to intestate was claimed on the hearing, by the administrator, to be $10,136.77, but William S. Ketcham, one of the respondents, called as a witness on their behalf, testified that the lumber and tangible property conveyed was at the time of its transfer by Holloway to the company estimated as worth at least $8,200, and enough to pay for all the Ketchams the forty per cent. assessment made then or about that time upon the stock.

On this hearing no claim was made by or on behalf of William S. Ketcham, Sr., that by reason of the transfer of this property to the company, he was entitled to credit for all of this amount upon his own subscription. No payment on account of any of the eighty-two shares of stock issued was shown otherwise than by the transfer of the Holloway property to the company, and in the absence of other proof the contemporaneous issue of the stock to the three Ketchams as paid-up stock would seem to conclude all of them from asserting against the company or the receiver any other appropriation or division of the payment. The substantial defence made by all of the Ketchams jointly on this hearing was, that there was no actual incorporation, that the stock had never been actually issued or delivered, and that no property had been transferred to the company. And they also proved that the intestate had afterwards taken the entire tangible property conveyed by the bill of sale and converted it to his own use on account of Holloway's indebtedness to himself, and had

not accounted for it to the company. As a result of the hearing, a decree was made fixing the total amount of corporate debts and the administration expenses at $6,344.97, and directing that for their payment an assessment should be made against the subscribers and holders of the stock. And Holloway and Campfield being found to be insolvent, it was further decreed that the receiver assess and collect the said sum, with interest, from said George W. Ketcham, George W. Ketcham, administrator of William S. Ketcham, deceased, and William S. Ketcham, Jr., out of their respective subscriptions which had not been fully paid up, but not to exceed sixty per cent. thereof, and to enforce payment of the assessment and call by suit, if necessary, against each of the said delinquent subscribers and stockholders. The order, however, was declared "to be made without prejudice to the rights of any person named in said petition or in this' order to any defence which they may have to any action, legal or equitable, on such alleged stock subscription." The qualification as to the effect of the order followed the practice then in force (see form in *Barkalow* v. *Totten (1894), 53 N. J. Eq. 574*), and one special purpose in mind was to leave open to the respondents a number of defences set up by them at the hearing, upon which I considered that I had no jurisdiction to pass. For these defences in detail I refer to my memorandum of decision filed in the case and printed. *64 N. J. Eq. 517.* The respondents had insisted on the right to pass upon all of the defences on the application for assessment. None of these defences, however, touched the question of the amount unpaid on the subscriptions. From this decree, dated June 9th, 1903, a joint appeal, as appears by the record, was taken by George W. Ketcham, as administrator and individually, and by William S. Ketcham, Jr., but not until December 26th, 1906, and one of the grounds of appeal specially stated in the petition of appeal (No. 11) is that the condition at the foot of the decree did not protect their legal rights. At the March term, 1906, this appeal was, on motion of the receiver, dismissed, because not taken within the time allowed by law. The decree for assessment was apparently considered an interlocutory and not final decree. By the decree the cause was also remitted to this court for such decree as might be equitable

and just. Before the appeal was taken, and in September, 1903, the receiver brought an action at law against William S. Ketcham, Jr., to recover an assessment of $3,095 made on his stock pursuant to this decree, and recovered judgment against him in the Essex circuit court, which judgment was affirmed by the court of errors and appeals November 28th, 1905. *McCarter* v. *Ketcham, 72 N. J. Law 247.* In this suit some of the defences not considered by me were set up and overruled. After this judgment of affirmance, the joint petition of appeal on behalf of, or in the name of, all the stockholders assessed was filed, as above stated, on December 26th, 1905, and on January 16th, 1906, an order was made in the cause, on application of William S. Ketcham, Jr., staying proceedings in the judgment against him pending the appeal, upon his paying into court an amount sufficient to pay judgment, costs, &c., $3,885. Upon the dismissal of the appeal an order was made July 24th, 1906, to pay to the receiver the judgment and costs out of this money in court, and this has been paid.

A suit was also brought by the receiver against George W. Ketcham to recover the assessment made against him pursuant to the decree of June 9th, 1903, and a judgment in favor of the receiver was affirmed on writ of error. The effect of the reservation in the order was considered by the appellate court in this second action (*McCarter* v. *Ketcham (August 8th, 1907), 74 N. J. Law 825*), and it was declared that this reservation was not intended to nullify the previous determination of the court of chancery with respect to essential matters, but only to reserve defences that were not concluded by the decree. The third suit brought against the administrator to recover an assessment of $3,095, made at the same time on the intestate's stock, under the order of June 9th, 1903, was brought in November, 1904, and in this suit the administrator, defended by the same counsel, in addition to the defences set up in the two previous suits, set up a plea of payment of the subscription of William S. Ketcham by the transfer of Holloway of the goods and chattels worth $10,000, and accepted by the company in payment of the intestate's subscription. By this offer the whole value of the goods was apparently to be appropriated to the pay-

ment of the intestate's subscription, and it ignored the fact that their value had already been appropriated in part to the payment of the subscriptions of William S. Ketcham, Jr., and George W. Ketcham. The trial judge finding this payment to be established, and that there was no question for the jury, directed a verdict for defendant. On error this judgment was reversed. The court of errors and appeals held that the reservation in the decree could not be construed to affect the conclusiveness of the decree as to the facts that the intestate was a subscriber to the stock, and that his subscription remained unpaid to the extent of sixty per cent. March 5th, 1908, *74 N. J. Law 829.* This cause being subsequently brought to trial again, the trial court refused to permit the evidence of payment offered in the first trial, and directed verdict for the receiver, upon which judgment has been entered.

Application is now made by the administrator to open the original decree of June 9th, 1903, and to allow him to put in the defence of payment of the intestate's entire subscription by the transfer of Holloway to the company. The general ground upon which the application is based, is the erroneous view of petitioner's counsel, at the time of the hearing, as to the legal scope and effect of the proceedings for assessment on this question of payment, and as to the conclusiveness of any order or decree which might be made in such proceedings. And it is further claimed that the view then taken by counsel was the view taken by the court itself, and expressed in the reservation. An examination of the whole record, evidence and conclusions on this hearing shows, I think, that so far as the particular defence of payment of the subscription was concerned, there was no substantial question made on behalf of any of the respondents, that if the transfer by Holloway was in fact accepted by the company as a consideration for the issue of paid-up stock, it was issued in payment of the eighty-two shares of stock issued to the three Ketchams for $8,200. There was no claim at the hearing that so far as the issue of stock was concerned, more than this amount was to be then issued as full paid, or that the intestate was to have the full benefit of the transfer as payment. The order allowing the payment of forty per cent. to all the Ketchams

by this transfer, and finding that not more than sixty per cent. of the respective subscriptions of any of them remained unpaid, was taken as the result of the evidence—part of it submitted by the respondents themselves—and the decree concluding the receiver against recovering more than sixty per cent. against any of them, was based on this evidence. It is not now claimed that, on the evidence then produced, any different or other decree should have been made in reference to this question of the payment and its appropriation, nor is any fault found with the decree on this score, but application is now made to open the decree for the purpose of allowing the petitioner to show, by other and additional evidence, that the value of the goods transferred to the company by Holloway was at least $10,000, and that the intestate's entire subscription of $10,000 was paid by the transfer, accepted by the company as such payment. Manifestly, the court, by the order of assessment, intended, so far as it could, to give effect, and, finally, to the matter of how much had been paid by the transfer, and for whom the payment had been paid. No question of fact on either of these points having been made by the respondents, whose substantial defence was that there were no valid or legal subscriptions or payments whatever, the reservation would be most fairly and properly construed as not intended to affect the defences or matters of fact, as to which no decision was intended to be made and referred to in the memorandum filed at the time. A decree specially reserving these defences, not intended to be passed on, would, perhaps, have been a preferable form of decree, but had such special decree been proposed, it would not have been either equitable or proper to have reserved in such decree the right to the petitioner to claim either that more than forty per cent. of the intestate's stock had been paid by the transfer, or that the stock issued to his sons for forty per cent. of their subscriptions had not been paid by the transfer. The whole equity of the decree on this matter of payment by Holloway's transfer, not only as between the receiver and the stockholder, but the equity as between William S. Ketcham, Sr., and Holloway, and between the three Ketchams themselves, was involved, and intended to be decided by the adjudication that forty per cent. of the subscriptions of the Ketchams had been

paid by Holloway's transfer of chattels, on which the senior Ketcham had a claim or lien for Holloway's debt to him. And, supposing the court to have the power of declaring defences reserved, the defence now proposed to be offered could not, upon the proofs produced, have been equitably reserved had application therefor been made at the time of the hearing. Had it been suggested at the time of decree, the only equitable method of dealing with it would have been to withhold any decree allowing the credit on the subscription of the other stockholders, and open the proofs for hearing of all the parties interested (Holloway included) on this point, before making order for assessment of any of them. But, independent of this equity relating to the order itself, the change in the situation of all the parties interested which has taken place since the decree, and in reliance on it, renders the application for the opening of the decree for the purpose indicated inequitable for additional reasons. The receiver, accepting on his part the decree of the court finding payments of the forty per cent. on the stock of William S. Ketcham, Jr., and George W. Ketcham, made assessments on the balance only as unpaid, and has collected them from these stockholders. These proceedings are final as between them, and the receiver could not now assess or collect as against either of them any part of the forty per cent. which by the order has been declared to be paid. These parties had an equity in the decree which cannot now be disturbed, after the time of appeal has passed. The proceedings for assessment, if opened at all, must be opened for all persons who may be affected by a rehearing, and the proceeding would be by a new hearing for another assessment, to which all persons parties to the original hearing (or at least all whose rights were in any way fixed by the decree) must be parties.

Another change in the status of the petitioner since the making of the order has an important bearing on the equity of the application to open or modify the decree. On the hearing which resulted in the making of the order, not only did the administrator, in common with William S. Ketcham, Jr., and George W. Ketcham, insist that the issue of the eighty-two shares of stock to the Ketchams was not a completed transaction as between

the company and them, but it was also proved that subsequent to the bill of sale from Holloway to the company, and the issue of this stock, the intestate, though William S. Ketcham, Jr., took into his own possession all the stock of lumber and tangible property covered by the bill of sale and converted the same to his own use, realizing about $6,000 therefor, which he appropriated on account of Holloway's debt to him and never accounted for to the company. By reason of this proof, it was claimed at the hearing, that if the stock was in fact issued, as claimed by the receiver, in consideration of the bill of sale, then the goods when converted by the intestate, or the proceeds of sale belonged to the company and the company had a valid claim against the intestate for the value of the goods converted, which claim was an asset, which the receiver should collect before making an assessment on the subscriptions. This contention was overruled upon the ground that in the absence of indemnification by the stockholders, the receiver, having no assets for the prosecution of this claim, which the stockholders did not admit, but disputed, could not be required, on behalf of the creditors, to prosecute the claim, and that under the Insolvent Corporation law he was authorized to call for the unpaid subscriptions, giving to the stockholders the right, if they desired, to prosecute for their own indemnification thereafter, and in the receiver's name, if necessary, any claim the company might have against the intestate's estate for the value of the goods converted. *Supra, 64 N. J. Eq. 520.* An action at law for this conversion which took place before the filing of the original bill in the cause (April, 1895) is outlawed, and one practical effect of now opening the decree to allow petitioner to prove that the subscription for the stock of the intestate was entirely paid by this transfer, would be to allow the petitioner to retain the consideration now alleged to have been paid for all his subscription and stock. The petitioner could not, in any event, be equitably entitled to open this decree for the purpose of proving the new and inconsistent defence, that payment of his entire subscription (and of his alone) was made by Holloway's bill of sale to the company, except upon the condition that he account to the receiver for the value of the goods converted, which was a sum more than sufficient to pay the debts, and the

other stockholders who have paid the assessment and have rights by reason of the order and their payments under it, would also seem to be entitled to resist the opening of the decree, except upon the terms that they be reimbursed out of the proceeds of the company's goods to be accounted for by the administrator, for their payments of the assessment.    Manifestly, the equities now existing between the parties interested in a new assessment, on the basis of the proofs now proposed by petitioner, could not be adjusted without a rehearing in the presence of all the parties originally interested, of the whole matter involved on the original hearing, as well as this collateral and independent question of the intestate's liability to account for the value of the goods conveyed to the company, as being one of its assets.    In view, therefore, of the substantial equities appearing on the merits of the whole case, I conclude that this decree should not be opened for the purpose of allowing a new assessment to be made, and I dispose of the application on this ground, irrespective of the other objections made by the receiver's counsel, based on the purely legal aspect of the application.    These are—*first,* that the misapprehension of counsel as to the legal scope and effect of the hearing on the application for assessment, or of the decree made thereon (even if it existed, which is denied), is no ground for opening the decree for a new hearing; *second,* that by the failure to appeal from the decree within the time limited by law, the decree became final and conclusive, and, after the expiration of the time limited for appeal, the decree cannot be opened or modified.    Final decrees are opened by bill of review, and the rule in this state is settled that such bill cannot be filed after three years, except for new evidence discovered after the decree. *Watkinson* v. *Watkinson (Court of Errors and Appeals, 1905), 68 N. J. Eq. 632,* followed in *Cook* v. *Weigley (Court of Errors and Appeals, 1905), 69 N. J. Eq. 836.*    The order for assessment in insolvent proceedings, like the order appointing a receiver, is an order made in the course of administration of the assets of the insolvent corporation, and both orders have been held by the court of errors and appeals to be interlocutory rather than final decrees.    The fact that the order for assessment settles finally, and conclusively as between the parties the issues litigated

and involved on the hearing for the order, does not of itself make the order for assessment a final decree in the cause, within the meaning of the appeal acts. Such order, like the order appointing a receiver, is only one step in the administrative part of the proceedings, and as an interlocutory order may in a proper case be opened by petition rather than by bill of review. *Franklin Electric Light Co.* v. *Fort Wayne, &c., Co. (Court of Errors and Appeals, 1899), 58 N. J. Eq. 543.* But, following the rule applied to final decrees, it would seem that the petition must be filed within forty days. The lapse of over three years, the time limited for a bill of review on final decrees, would certainly seem to be fatal.

My present view is that each of these objections is well taken, but I prefer to place the decision on the substantial merits of the application, and as the order was originally made, taking into consideration special equities in relation to the alleged payment of forty per cent. proved to exist between the several stockholders, including Holloway, as well as the three Ketchams, and the order has since been accepted and acted on by the receiver and the other stockholders, I conclude that the petitioner has no standing to destroy these equities then settled, and after this lapse of time have a rehearing and reassessment on new and contradictory evidence and defences.